UNITED STATES DICTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR NONDISCLOSURE ORDER PURSUANT TO 18 U.S.C. § 2705(b) FOR GRAND JURY SUBPOENA # GJ2014031022709 | Misc. No.  14-287 (RWR) (JMF) |
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR NONDISCLOSURE ORDER PURSUANT TO 18 U.S.C. § 2705(b) FOR GRAND JURY SUBPOENA # GJ2014031422765 | Misc. No.  14-296 (RWR) (JMF) |

**MOTION OF THE AMERICAN CIVIL LIBERTIES UNION AND THE AMERICAN CIVIL LIBERTIES UNION OF THE NATION'S CAPITAL TO INTERVENE AND FOR UNSEALING, AND FOR LEAVE TO FILE MEMORANDUM AS AMICUS CURIAE**

Pursuant to Fed. R. Civ. P. 24(b), the American Civil Liberties Union and the American Civil Liberties Union of the Nation's Capital (collectively "ACLU") hereby move to intervene in these matters for the purpose of challenging this Court's blanket sealing of the proceedings. Additionally, the ACLU seeks leave to file this memorandum as *amicus curiae* addressing the propriety of Magistrate Judge Facciola's invitation to the parties who would be subject to gag orders to file papers expressing their positions on the government's applications.

The American Civil Liberties Union is a nationwide, nonprofit organization that since 1920 has sought to protect the civil liberties of all Americans.  The American Civil Liberties Union of the Nation's Capital is the Washington, D.C. affiliate of the American Civil Liberties

Union.  The ACLU has frequently appeared in this Court, as counsel to parties or as *amicus*, to defend the right of public access to court proceedings and filings.

The government opposes the ACLU's motion for intervention for purpose of unsealing and believes the Court need not address the ACLU's motion for leave to file as *amicus* until it resolves whether the ACLU may intervene in these sealed proceedings.

## INTRODUCTION

Over the past few weeks, the government has submitted to Magistrate Judge Facciola at least three applications for gag orders, pursuant to 18 U.S.C. § 2705(b), that would prevent Twitter and Yahoo from disclosing to any person the existence or content of grand jury subpoenas issued to the companies. With regard to the first two applications, Judge Facciola invited Yahoo!, Inc. ("Yahoo") and Twitter, Inc. ("Twitter") to intervene as respondents and express whether they would like to be heard before the court ruled on the gag order applications. *See Am. Order*, Misc. Case No. 14-287, ECF No. 3; *Am. Order*, Misc. Case No. 14-296, ECF No. 3. Judge Facciola simultaneously barred Twitter and Yahoo from disclosing any non-public information about the grand jury subpoenas at issue, pending resolution of the matter. *See Am. Order*, Misc. Case No. 14-287, ECF No. 3; *Am. Order*, Misc. Case No. 14-296, ECF No. 3. Applying the common law right of access to court documents, Judge Facciola further ordered the government to file public, redacted copies of its gag order applications. *Order*, Misc. Case No. 14-287, ECF No. 4; *Order*, Misc. Case No. 14-296, ECF No. 4. Judge Facciola's Orders were not final and did not reach the merits of the gag order applications under consideration. *See Mem. Op. and Order*, Misc. Case No. 14-480, ECF No. 2.[1]

---

[1] With respect to the third gag order application, again filed with respect to Twitter, Judge Facciola issued a memorandum opinion and order holding that the court had inherent power to invite Twitter's participation, that the First and Fifth Amendments afford Twitter a right to be

The government filed interlocutory appeals on both sets of orders. It also moved this Court to reach the applications' merits and issue the proposed gag orders. *See id.* (citing *Government's Appeal from Magistrate Judge's Orders Regarding Government's Appl. for Order Pursuant to 18 U.S.C. § 2705(b)*, Misc. Case No. 14-287, ECF No. 5-1 ("*Government's Appeal 14-287*") (sealed); *Government's Appeal from Magistrate Judge's Orders Regarding Application for Order Pursuant to 18 U.S.C. § 2705(b)*, Misc. Case No. 14-296, ECF No. 5-1 ("*Government's Appeal 14-296*") (sealed)). Both appeals were filed under seal, apparently only "because each contains a single sentence on the second page explaining the general basis for the underlying grand jury investigation." *Id.* n.1. This Court granted the government's motions to seal both appeals and ordered Yahoo and Twitter not to file during the appeal proceedings "any notice on the public docket indicating the intent of the company to be heard on the merits of the government's non-disclosure application, or any other filing." *Order*, Misc. Case No. 14-287, ECF No. 7; *Order*, Misc. Case No. 14-296, ECF No. 7.

The documents filed in these prior proceedings are judicial records of significant interest to the American public. Insofar as the government claims an interest in preventing the disclosure of these documents because they might reveal information about a grand jury investigation, redaction—as opposed to blanket sealing—is the appropriate way to reconcile that interest with the public's First Amendment and common law rights of access. Additionally, Magistrate Judge Facciola's decision to invite Twitter and Yahoo to participate in briefing on the government's gag order application was well within his inherent powers.  Magistrate Judge Facciola's rulings were therefore correct, and this Court should, accordingly, unseal the records in these

---

heard, and that the common law right of access required that the filings in the matter be made public in redacted form. *Mem. Op. and Order*, Misc. Case No. 14-480, ECF No. 2. The government subsequently withdrew its gag order application. *Notice*, Misc. Case No. 14-480, ECF No. 3.

proceedings with only those redactions necessary to protect the government's grand jury investigation, and permit Yahoo and Twitter to be heard on the government's application for an order that would restrain their speech.

## ARGUMENT

**I.      The ACLU Should Be Allowed to Intervene for the Purpose of Asserting the Public's Right of Access And Should Also Be Allowed to Participate as *Amicus Curiae*.**

Under Federal Rule of Civil Procedure 24(b)(1)(B), the Court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Courts, including the D.C. Circuit, have held that "third parties may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). To litigate a claim on the merits under Rule 24(b)(1)(B), "the putative intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Id.* However, because parties who seek intervention for the limited purpose of obtaining access to sealed documents "do not ask the district court to exercise jurisdiction over an additional claim on the merits, but rather to exercise a power that it already has, namely the power to modify a previously entered confidentiality order," courts do not require third parties to demonstrate an independent ground for subject matter jurisdiction and focus only on the latter two factors. *Id.* at 1047. The ACLU's motion for limited intervention meets both requirements.

First, the motion is indisputably timely. In weighing the timeliness of an intervention motion, the court must consider "all the circumstances, especially . . . [the] time elapsed since the

inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already in [the] case." *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 19 (D.D.C. 2010) (alterations in original) (quoting *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)) (internal quotation marks omitted). Here, the ACLU's motion to intervene for the limited purpose of asserting the public's right of access comes only 19 days after the Court's sealing decision. Moreover, because the ACLU does not seek to contest the merits of the litigation, its intervention will not impede the government's ability to litigate the merits of the underlying dispute. For this reason, courts routinely allow intervention for unsealing purposes even after lengthy delays. *See id.* (holding that intervention was timely "more than one year after the routine briefing was completed on the motion for summary judgment, and some six months after the last hearing" in the case (citing *Nat'l Children's Ctr.*, 146 F.3d at 1047)); *see also, e.g.*, *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1100 (9th Cir. 1999); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988).

Second, the ACLU's public right of access claim shares a common question of law or fact with the underlying litigation. As with the jurisdiction and timeliness factors, the commonality requirement is flexibly applied "when the movant seeks to intervene for the collateral purpose of challenging a confidentiality order." *Nat'l Children's Ctr.*, 146 F.3d at 1047. Thus, courts have recognized that "the issue of the scope or need for the confidentiality order itself presents a common question that links the movant's challenge with the main action." *Id. See, e.g.*, *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777–78 (3d Cir. 1994) (collecting cases); *Aristotle Int'l, Inc.*, 714 F. Supp. 2d at 19. The ACLU should therefore be allowed to

intervene for the limited purpose of asserting the public's right to access these documents. *See In re Guantanamo Bay Detainee Continued Access to Counsel*, --- F. Supp. 2d ----, Misc. No. 12-mc-398 (RCL), 2013 WL 5189595, at *2 (D.D.C. Sept. 17, 2013) (granting reporter's motion to intervene for the purpose of asserting the public's right to access a sealed declaration); *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 5 n.3 (D.D.C. 2013) ("The parties do not seriously dispute that the Post, as a nonparty newspaper, may 'permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order.'" (quoting *Nat'l Children's Ctr.*, 146 F.3d at 1046)).[2]

Third, although the ACLU is not privy to the contents of the grand jury subpoenas in these cases, it is nevertheless troubled, as the Court should be, by the government's overuse of gag orders to prevent public and judicial scrutiny of its invasions of citizens' privacy. As noted in footnote 1, the government recently withdrew a gag order application when ordered to file a redacted version publicly, suggesting that the application had not been necessary in the first place. In two cases in this Court, the ACLU filed motions to quash grand jury subpoenas on behalf of customers of WordPress and Twitter after the customers had been notified of the subpoenas by those companies. In the first case, the government withdrew the subpoena, presumably to avoid the granting of the motion to quash on the ground that the allegedly

---

[2] Regardless whether the Court grants the ACLU's motion to intervene, however, it has an independent duty to evaluate the public's right of access to these proceedings. *See, e.g., Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) ("The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it)."); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 307 (2d Cir. 1997) (holding, *sua sponte*, that the district court must review records filed wholesale under seal to determine whether their confidential treatment was warranted, without considering whether there was a person or entity that had a specific interest in gaining access to them or making them public); *cf. Washington Post v. Robinson*, 935 F.2d 282, 289 (D.C. Cir. 1991) (holding that a trial "must articulate specific findings on the record demonstrating that the decision to seal the plea agreement is narrowly tailored and essential to preserve a compelling government interest").

suspicious activity that had prompted the subpoena was political commentary that was clearly protected by the First Amendment, and not remotely suggestive of any crime; the motion papers were then placed on the public docket. *In re Grand Jury Subpoena No. 10218019,* No. 11-mc-362 (D.D.C. June 17, 2013). In the second case, the ACLU was able to agree with the government on a procedure that would provide the necessary information without exposing the customer to potentially harmful FBI interviews of his employer, co-workers, and neighbors. *In re Grand Jury Subpoena No. 11116275,* 846 F. Supp. 2d 1 (D.D.C. 2012). These cases demonstrate how gag orders such as those requested here can be harmful to innocent individuals, and how notification to the subjects of surveillance orders can enable the courts to better evaluate the validity of subpoenas. This is not to say that gag orders are never justified, but it is to say that enhanced judicial scrutiny of such requests, including participation by the prospective recipient of such an order, is desirable.

Finally, the ACLU should be granted leave to file this memorandum as *amicus curiae* in support of Judge Facciola's decision to invite Twitter's and Yahoo's participation as respondents in this proceeding. "District courts have inherent authority to appoint or deny *amici* which is derived from Rule 29 of the Federal Rules of Appellate Procedure." *Jin v. Ministry of State Sec.,* 557 F. Supp. 2d 131, 136 (D.D.C. 2008). The role of *amici* is to assist "in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Newark Branch, NAACP v. Town of Harrison*, 940 F.2d 792, 808 (3d Cir. 1991). This authority supports the Court's exercise of its discretion to accept the ACLU's *amicus* brief.

## II.     The Documents in This Case Should Be Unsealed, Subject to Appropriate Redaction.

"The value of openness in judicial proceedings can hardly be overestimated. 'The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification.'" *United States v. Moussaoui*, 65 F. App'x 881, 885 (4th Cir. 2003) (quoting *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000)). Because judicial transparency is essential to our democratic system of government, both the First Amendment and the common law protect the public's right of access to court proceedings and records. *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564–73 (1980); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *Robinson*, 935 F.2d at 287–88. Although these rights are not absolute, they firmly prohibit judicial secrecy imposed "without sufficient justification." *New York Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 296 (2d Cir. 2012).

The public has a qualified right to the documents at issue here under both the First Amendment and the common law. While that right does not require the government to forgo its interest in protecting the secrecy of a grand jury investigation, it does require release of information that would not compromise the investigation. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 577–79 (4th Cir. 2004). For that reason, the Court should lift the blanket seal on these proceedings, which is inconsistent with the public's right of access, and require the government to provide sufficiently specific justifications for its requested sealings or redactions. *See, e.g.*, *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 11–12 (ordering the parties to redact minors' personal identifying information from settlement documents, so that the documents—to which the public had a right of access—could be filed on the public docket).

Even if the Court concludes that the public's right of access does not compel disclosure, it should exercise its own discretion to unseal the documents—with only those redactions necessary—and bring transparency to these gag order proceedings.

### A.   The First Amendment Right of Access

The public's First Amendment right of access applies to the documents at issue here and compels their disclosure. Under the Supreme Court's prevailing "experience and logic" test, the public's qualified First Amendment right of access to judicial documents and proceedings attaches where (a) the types of judicial processes or records sought have historically been available to the public, and (b) public access plays a "significant positive role" in the functioning of those proceedings. *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 9, 11 (1986) ("*Press-Enter. II*"); *see Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605–07 (1982); *Robinson*, 935 F.2d at 287–92. Here, both prongs support the public's First Amendment right of access to the documents at issue.

First, there is a long tradition of access to documents filed in connection with prior restraint proceedings, even where the information involves matters of national security. *See Union Oil Co. of Cal*, 220 F.3d at 567 ("Briefs in the *Pentagon Papers* case and the hydrogen bomb plans case were available to the press, although sealed appendices discussed in detail the documents for which protection was sought." (citations omitted) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971); *United States v. Progressive, Inc.*, 467 F. Supp. 990 (W.D. Wis. 1979))); *Doe v. Ashcroft*, 317 F. Supp. 2d 488, 491–93 (S.D.N.Y. 2004) (in a case challenging the government's use of National Security Letters to obtain certain intelligence-related information from communications service providers and prohibiting the providers from disclosing the inquiry, ordering the parties to provide timely public access to all non-sensitive

information filed in connection with the lawsuit, particularly filings related to purely legal issues); *Patuxent Publ'g Corp. v. State*, 429 A.2d 554, 555 (Md. Ct. Spec. App. 1981) ("The litigation of a First Amendment issue can be as sensitive a public concern as the litigation of a violation of the criminal law.") (holding that the closure of gag order proceedings violated the public's First Amendment right of access); *cf. In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 890 (S.D. Tex. 2008) ("Dispositive documents, that is documents that influence or underpin the judicial decision are 'open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality.'" (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002))).[3] Moreover, § 2705(b) provides no automatic sealing provision for gag order applications. This statutory default of openness stands in stark contrast to the automatic sealing accorded applications for judicial orders in other contexts. *See* 15 U.S.C. § 57b-2a(e)(2) ("Upon application by the [Federal Trade Commission], all judicial proceedings pursuant to this section [including proceedings under 18 U.S.C. § 2705(b)] shall be held in camera and the record thereof sealed until the expiration of the period of delay or such other date as the presiding judge or magistrate judge may permit."); 18 U.S.C. § 2518(8)(b) ("Applications made and orders granted under this chapter [of the Wiretap Act] shall be sealed by the judge.").

The logic prong of the analysis focuses on whether access to the sealed documents would serve a "significant positive role in the functioning of the particular process in question." *Press-*

---

[3] To be sure, there is not yet a long history of access to § 2705(b) orders in particular, but that is because gag order proceedings under § 2705 are a recent innovation—the statute was enacted in 1986 and came to prominence only in the last decade as cell phone and Internet use became ubiquitous. Where "[a] new procedure" is "substituted for an older one," however, courts evaluate the "tradition of access to the older procedure." *United States v. El-Sayegh*¸131 F.3d 158, 161 (D.C. Cir. 1997) (citing *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1337 (D.C. Cir. 1985)).

*Enter. II*, 478 U.S. at 8. Transparency concerning judicial documents like the ones at issue ensures fairness, decreases bias, improves public perception of the justice system, and enhances the chances that the resulting orders will be well-justified and narrowly tailored. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (explaining that the law's recognition of the importance of judicial transparency serves "the citizen's desire to keep a watchful eye on the workings of public agencies . . . [and] the operation of government"). These interests are particularly acute where, as here, the government relies on a controversial statutory authority affecting the First Amendment rights of private individuals and where at least one court has openly questioned the applicability of that authority. *See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 866 F. Supp. 2d 1172, 1173 (C.D. Cal. 2011) (holding that 18 U.S.C. § 2705(b) does not authorize the government to obtain an order prohibiting disclosure of requests for "subscriber information"); *see also In re Application for Pen Register & Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d 747, 748–49 (S.D. Tex. 2005) (refusing to seal an opinion denying the government's application for prospective cell site information, "because it concerns a matter of statutory interpretation which does not hinge on the particulars of the underlying investigation," and because the issue explored in the opinion had "serious implications for the balance between privacy and law enforcement, and is a matter of first impression in this circuit as well as most others").

Where the First Amendment right of access attaches to judicial documents, strict scrutiny applies to any restriction of that right. *See Globe Newspaper*, 457 U.S. at 606–07 & n.17; *accord Richmond Newspapers*, 448 U.S. at 581. To overcome such scrutiny, the party seeking to restrict access must support its sealing motion with "compelling reasons," and the Court "must articulate specific findings on the record demonstrating that the decision to seal . . . is narrowly tailored

and essential to preserve [that] compelling government interest. *Robinson*, 935 F.2d at 289 & n.10; *see also Press Enter. II*, 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by [a] conclusory assertion.").

Although protecting the secrecy of a criminal investigation qualifies as a compelling governmental interest, the blanket sealing of all judicial documents remotely related to an investigation is not narrowly tailored to serve that interest, for at least three reasons. First, a generalized interest in "protecting the integrity of an ongoing law enforcement investigation" cannot justify sealing judicial documents. *Va. Dep't of State Police*, 386 F.3d at 577–79. Rather, the government must demonstrate "specific facts and circumstances" to justify "the effort to restrict public access," so that the Court may "understand how the integrity of the investigation reasonably could be affected by the release of such information." *Id.* at 579. Second, the Court must make individualized sealing determinations with respect to "each document" sought to be sealed. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988) (noting that because different levels of protection attach to different judicial records, courts "must determine the source of the right of access with respect to each document sealed").[4] Finally, a document may not be sealed in its entirety if it is possible to accommodate the government's interests through some "less drastic alternatives to sealing," such as redaction of specific information. *Stone*, 855 F.2d at 181. If the Court decides that such alternatives are insufficient, it must "state the reasons" for rejecting them. *Id.* (internal quotation marks omitted).

---

[4] *ACLU v. Holder*, 673 F.3d 245 (4th Cir. 2011), is not to the contrary. In that case, the panel majority held, over a dissent, that it was not necessary to conduct an individualized sealing analysis for each sealed document because the complaint presented only a facial challenge. *Id.* at 257. Where, as here, there is an as-applied challenge to specific sealing decisions, the Court recognized that individualized assessments would be necessary. *Id.*

Here, the government invokes precisely the sort of generalized law enforcement interest that the public's right of access forbids. It apparently argues that its interest in protecting the secrecy of the grand jury investigation justifies the imposition of a blanket seal on these collateral gag order proceedings. *See Order*, Misc. Case No. 14-480, ECF No. 2. But it fails to demonstrate that each of the documents at issue must be sealed in its entirety. Indeed, there is good reason to believe that the government could easily redact the documents to remove any reference to the underlying grand jury proceedings. The appeals to this Court "were apparently filed under seal because each contains a single sentence on the second page explaining the general basis for the underlying grand jury investigation." *See id.* And Judge Facciola has observed that an appropriately redacted gag order application would reveal "[n]o details about the grand jury investigation." *Id.* If the government can trump the public's right of access to a document simply by mentioning the existence of a grand jury proceeding, then the right of access will extend only so far as the government wishes. That is not the law. This Court should require the government to explain why every single document in this proceeding must be sealed in its entirety, allow the ACLU an opportunity to respond, and then make the individualized determination required by the First Amendment right of access.

### B. The Common Law Right of Access

The public's common law right of access also requires the unsealing of these proceedings. The common law affords the public a presumptive "right to access *all* judicial records and documents," so long as the public's interest in accessing the documents is not outweighed by countervailing concerns. *In re Application for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013); *see also El-Sayegh*, 131 F.3d at 161. "[W]hat makes a document a judicial record and subjects it to the common law right of access is the role it plays

in the adjudicatory process." *Id.* at 163; *see also, e.g.*, *In re Application for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d at 290–91 ("[D]ocuments filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights.") (collecting cases); *In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002) (holding that the common law presumption of access applies to "those materials which properly come before the court in the course of an adjudicatory proceeding and which are relevant to that adjudication" (internal quotation marks omitted)). Thus, for example, courts have held that the public's presumptive common law right of access encompasses: search warrant materials, *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 92 (D.D.C. 2008); motions for electronic surveillance orders, *In re Application for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d at 290–91; and factual returns filed in response to habeas petitions, *In re Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 13 (D.D.C. 2009). Likewise here, the government's application for a gag order pursuant to 18 U.S.C. § 2705(b), and related documents, provide the substantial predicate for a judicial order regarding Yahoo's and Twitter's First Amendment rights. Those documents are accordingly judicial records subject to the common law right of access.

To determine whether the government has rebutted the public's presumptive right of access under the common law, the Court must "balance the government's interest in keeping the document[s] secret against the public's interest in disclosure." *Washington Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996). In so balancing, the Court must begin with a "strong presumption in favor of public access," *Nat'l Children's Ctr.*, 98 F.3d at 1409, and should then proceed to consider the six factors outlined in *United States v. Hubbard*: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the

documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. 650 F.2d 293, 317–22 (D.C. Cir. 1980). As with the First Amendment right of access, the party seeking closure "bears the burden of showing that the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury." *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)) (internal quotation marks omitted).

In this case, the balancing of interests unequivocally supports disclosure. First, the American people have a strong and legitimate interest in learning about the government's attempt to judicially silence companies that are not parties to any relevant court proceeding, particularly where the government relies on questionable statutory authority for its gag request. *See Order*, Misc. Case No. 14-480, ECF No. 2 (questioning whether 18 U.S.C. § 2705(b) authorizes the government to obtain the requested gag orders) (citing *In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 866 F. Supp. 2d at 1173); *cf. FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch."); *In re Application for Pen Register & Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d at 748–49 (refusing to seal an opinion denying the government's application for prospective cell site information, "because it concerns a matter of statutory interpretation which does not hinge on the particulars of the underlying investigation," and because the issue explored therein had "serious

implications for the balance between privacy and law enforcement, and is a matter of first impression in this circuit as well as most others").

Second, a significant amount of the information about the documents is already public because Judge Facciola has filed a public opinion describing the government's gag order application and the basis for its appeal. *See Order*, Misc. Case No. 14-480, ECF No. 2; *see also In re Application of N.Y. Times Co.*, 585 F. Supp. 2d at 93 (holding that when "much of the critical information is already in the public forum . . . this factor weighs in favor of unsealing the . . . materials").

Third, there is no reason to believe that appropriately redacted documents would jeopardize anyone's property or privacy interests, and the documents were not filed in this case for the purpose of vindicating such interests. *Cf. Hubbard*, 650 F.2d at 321 (noting that it would be ironic if documents introduced in a motion to suppress for the purpose of demonstrating the unlawfulness of a search required the defendant to acquiesce in a substantial invasion of the very privacy interests he sought to vindicate).

Finally, although the government objects to disclosure in this case, it has conspicuously failed to demonstrate that the release of appropriately redacted documents would prejudice its interests in any way. *See Order*, Misc. Case No. 14-480, ECF No. 2. The scales thus tip ineluctably in favor of removing the blanket seal on these proceedings.

### C. *Discretionary Disclosure*

Even if the Court determines that the public does not have a First Amendment or common law right to access, its supervisory power over its own records permits it to unseal the documents here at issue. *See In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 486–87 (FISC Dec. 11, 2007) (quoting *Nixon*, 435 U.S. at 598); *see also Gambale v. Deutsche*

*Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004). The ACLU respectfully requests that the Court exercise this authority.

This case raises a novel and complex legal issue (explained more fully below) about the government's statutory authority to impose a prior restraint on a party not before the Court. The public has a strong interest in learning about the legal arguments raised by the government to support that authority, both because the public has an inherent interest in learning about government attempts to impose prior restraints and because the imposition of gag orders under 18 U.S.C. § 2705(b) deprives the public of crucial information regarding the government's electronic surveillance activities, itself a topic of intense public debate. Indeed, this very case has already received attention from the legal press. *See* Zoe Tillman, *Judge Asks Twitter and Yahoo to Respond to Subpoena Question*, Blog of the Legal Times (March 24, 2010).[5] The people cannot assess the country's laws, the work of their legislators, or the powers conferred upon their executive officials unless they know how the government and the courts interpret the laws. In this way, the sealed documents at issue have far reaching implications. Moreover, Judge Facciola's opinions demonstrate that the type of tailored, limited publication of the documents requested here can be accomplished without prejudicing the government's investigation. Disclosure of these documents would thus substantially advance the public interest without compromising the government's interest and should be granted regardless whether the law requires it.

---

[5] *Available at* http://www.nationallawjournal.com/legaltimes/blog-of-legal-times/id=1202648129128/Judge+Asks+Twitter+and+Yahoo+to+Respond+to+Subpoena+Questi on%3Fmcode=1383246464404&curindex=98.

**III.   Judge Facciola Properly Exercised His Inherent Authority to Invite Briefing on the Government's Gag Order Applications.**

Additionally, in its capacity as *amicus curiae*, the ACLU urges this Court to affirm Judge Facciola's decision inviting Yahoo and Twitter to brief the legality of the government's application for a gag order pursuant to 18 U.S.C. § 2705(b). A magistrate judge's ruling on a nondispositive pretrial matter, such as the decision to invite briefing from an interested party, may be reversed by this Court only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a). Judge Facciola's order inviting Yahoo and Twitter was fully within his inherent authority, and therefore neither clearly erroneous—indeed, not erroneous at all—nor contrary to law.

Courts have inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). That authority includes the power to invite briefing on an issue from a party whose submission may be helpful to the Court's consideration of the issue. *See, e.g.*, *United States v. Davis*, 180 F. Supp. 2d 797, 799–800 (E.D. La. 2001) ("As a general proposition, the authority of a court to appoint independent or amicus curiae counsel is broad and well-established."); *Martinez v. Capital Cities/ABC-WPVI*, 909 F. Supp. 283, 286 (E.D. Pa. 1995) (Pollak, J.) ("A district court has inherent authority to appoint *amicus curiae* to assist in a proceeding."); *see also United States v. Windsor*, 133 S. Ct. 814 (2012) (Mem.) (appointing Prof. Vicki Jackson to brief and argue a jurisdictional issue not raised by the parties).

Courts not only can, but should, exercise this inherent authority to solicit adversarial briefing where the government invokes questionable statutory authority to support an *ex parte* application for a judicial order. Thus, for example, in *In re Application for an Order for*

*Disclosure of Telecommunications Records & Authorizing the Use of a Pen Register & Trap and Trace*, a case where the government sought certain types of cell site data pursuant to statutory authority that had been deemed insufficient by several other district courts, Magistrate Judge Gorenstein asked the Federal Defenders of New York, Inc. to appear as *amicus curiae* and "greatly benefitted from the briefing provided by both sides." 405 F. Supp. 2d 435, 436 (S.D.N.Y. 2005); *see also, e.g.*, *In re United States*, 665 F. Supp. 2d 1210, 1212 (D. Ore. 2009) (stating that the district court has "asked the Federal Public Defender's office to respond to the United States's briefing [regarding a magistrate judge's order to provide notice of 18 U.S.C. § 2703(a) warrant searches to e-mail subscribers] as amicus curiae"); *In re Application for an Order Authorizing the Use of Two Pen Register & Trap and Trace Devices*, 632 F. Supp. 2d 202, 203 (E.D.N.Y. 2008) ("Because of the complexity and significance of these legal issues [regarding the government's supplemental application for prospective cell-site information], the court invited the Electronic Frontier Foundation . . . to submit a memorandum of law as *amicus curiae*."); *In re Application for an Order*, 411 F. Supp. 2d 678, 680 (W.D. La. 2006) (noting that the court had solicited a letter brief from  Federal Public Defender regarding the government's application for prospective cell site information); *cf. In re Application for an Order Directing a Provider of Electronic Communication Service to Disclose Records to the Government*, 620 F.3d 304, 306 n.1 (3d Cir. 2010) ("Because the Government's application was *ex parte,* there was no adverse party to review or oppose it. However, we received amici briefs in support of affirmance of the District Court . . . . We are grateful to the amici for their interest in the issue and their participation in this matter.").

Here, Judge Facciola observed that there are significant questions about the government's statutory authority for obtaining its requested gag order. *See Order*, Misc. Case No. 14-480, ECF

No. 2. In *In re Application for an Order Pursuant to 18 U.S.C. § 2705(b)*, Magistrate Judge

Zaresky of the United States District Court for the Central District of California held that 18

U.S.C. § 2705(b) does not authorize courts to prohibit Internet Service Providers ("ISPs") from

notifying subscribers about grand jury subpoenas seeking their information. 866 F. Supp. 2d at

1179–80. Observing that Federal Rule of Criminal Procedure 6(e)(2) prohibits courts from

gagging recipients of grand jury subpoenas, the court held that § 2705(b) does not trump this

prohibition, because the provision applies only to applications for content information under §

2703(b), not applications for subscriber information under § 2703(c). *See id.* at 1173–74. In

response to a similar request for a § 2705(b) gag order on Twitter, Magistrate Judge Robinson of

this Court ordered the government to file a memorandum addressing Judge Zaresky's opinion

and "all other applicable authorities." *See Order*, Misc. Case No. 14-480, ECF No. 2 (citing

*Order*, Misc. Case No. 13-213 ECF No. 1 (D.D.C. March 14, 2013) (under seal)). However, the

government apparently ignored her order, as she "never received any supplemental briefing" and

"never issued the nondisclosure order in that matter." *Id.* Under these circumstances, Judge

Facciola had good reason to invite briefing from Twitter and Yahoo, both because the companies

would be subject to the government's proposed gag order and because the companies would

vigorously defend their subscribers' right to know about the government's electronic

surveillance activities.[6] Far from being clearly erroneous or contrary to law, Judge Facciola's

---

[6] *See Permanent Provisions of the Patriot Act: Hearing Before the Subcomm. on Crime, Terrorism & Homeland Sec. of the H. Comm. on the Judiciary*, 112th Cong. 69 (2011) (statement of Todd M. Hinnen, Acting Assistant Attorney Gen. for Nat'l Sec.), *available at* http://judiciary.house.gov/_files/hearings/printers/112th/112-15_65486.PDF (after congressman asks Acting Assistant AG Hinnen "why would [a service provider] . . . have an incentive to hire lawyers to protect [their subscribers' privacy] rights?," Mr. Hinnen responded that "telecommunication providers and Internet service providers take the privacy of their customers and subscribers very seriously and I think are often an effective proxy for defending those rights").

invitation for supplemental briefing regarding the government's gag order application was eminently reasonable in light of the contravening authority and the government's reluctance to explain its position.

## CONCLUSION

For the foregoing reasons, the Court should: (1) grant the ACLU's motion to intervene and to participate as *amicus curiae*; (2) unseal the documents, subject to appropriate redaction; and (3) affirm Judge Facciola's decision inviting Yahoo and Twitter to participate in briefing on the government's gag order applications.

Respectfully submitted,

/s/ *Brian M. Hauss*
Brian M. Hauss
Alex Abdo
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654

/s/ *Arthur B. Spitzer*
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
   of the Nation's Capital
4301 Connecticut Ave., N.W., Suite 434
Washington, DC 20008
Phone: (202) 457-0800
Fax: (202) 457-0805

*Counsel for Movant*

April 16, 2014

**UNITED STATES DICTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR NONDISCLOSURE ORDER PURSUANT TO 18 U.S.C. § 2705(b) FOR GRAND JURY SUBPOENA # GJ2014031022709 | Misc. No.  14-287 (RWR) (JMF) |

---

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR NONDISCLOSURE ORDER PURSUANT TO 18 U.S.C. § 2705(b) FOR GRAND JURY SUBPOENA # GJ2014031422765 | Misc. No.  14-296 (RWR) (JMF) |

---

**[Proposed]**
**ORDER**

Upon consideration of the motion of the motion of the American Civil Liberties Union and the American Civil Liberties Union of the Nation's Capital to intervene in these matters and for leave to participate as amici curiae, it is hereby

ORDERED that the motion is granted.  The American Civil Liberties Union and the American Civil Liberties Union of the Nation's Capital are hereby granted leave to intervene in these matters for the purpose of seeking unsealing of court records, and to participate as amici curiae.  It is further

ORDERED that the government shall file redacted copies of its 18 U.S.C. § 2705(b) Applications, draft orders, appeals to this Court, and motions to seal on the public record in these matters.  It is further

ORDERED that this Court's order of March 27, 2014, in these matters is hereby

VACATED, and Magistrate Judge Facciola's orders of March 24, 2014, are hereby

AFFIRMED.

Dated: _____

_____
Richard W. Roberts
Chief Judge
United States District Court